UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

EDWARD FAHEY,                                    MEMORANDUM AND ORDER

　　　　　Plaintiff,                              10 Civ. 4609 (ILG) (MDG)

　　　- against -

CITY OF NEW YORK and NEW
YORK CITY FIRE DEPARTMENT,

　　　　　Defendants.
-------------------------------------------------------x

GLASSER, Senior United States District Judge:

On October 8, 2010, plaintiff Edward Fahey ("Fahey"), who suffers post-traumatic stress disorder ("PTSD") as a result of his experiences working as a firefighter at ground zero on September 11, 2001, initiated this action against his former employers, defendants the City of New York (the "City") and the New York City Fire Department (the "FDNY"), alleging that he was wrongfully terminated on account of his PTSD in violation of the Americans with Disabilities Act, 42 U.S.C. § 1210 et seq. (the "ADA"), the New State Executive Law §§ 296, 297, and the New York City Administrative Code § 8-107.

Defendants have moved for summary judgment on Fahey's claims, contending, among other things, that Fahey was terminated because he tested positive for cocaine use, not because he suffered from PTSD, and that this suit merely constitutes a last ditch effort by Fahey to relitigate the propriety of his termination—a decision that has previously been upheld both in administrative proceedings and on judicial review by the New York State Supreme Court (the "state court").

For the reasons stated below, defendants' motion for summary judgment is hereby GRANTED.

## I. BACKGROUND

The following facts are undisputed. Fahey joined the FDNY as a firefighter on October 15, 1995 at the age of 27. Defendants' Statement Pursuant to Local Civil Rule 56.1 dated Oct. 20, 2011 ("Defs.' 56.1") ¶ 1 (Dkt. No. 11); Complaint dated Aug. 12, 2010 ("Compl.") ¶ 14 (Dkt. No. 1). From 1998 to 2004, Fahey was assigned to Ladder 1, Battalion 1 on Duane Street in downtown Manhattan—near the former World Trade Center site. Declaration of Jane Andersen in Support of Defendants' Motion for Summary Judgment ("Andersen Decl.") Ex. D, at 16-17 (Dkt. No. 20); Compl. ¶ 19.

On the morning of September 11, 2001, Fahey was assigned the job of driving First Battalion Chief Joseph Pfeifer ("Pfeifer"), and, after seeing the first hijacked plane strike the North Tower of the World Trade Center, went to the North Tower to assist Pfeifer in organizing a command station in its lobby. Compl. ¶ 19, 21. Once there, the scenes Fahey witnessed were horrific: "burned victims, badly injured victims, and bodies exploding." Compl. ¶ 21. Moreover, when he left the North Tower lobby to retrieve radios and get a count of the fire companies reporting to the site, he witnessed scores of people jumping from its top floors, "raining bodies around [him]." Compl. ¶ 22. Shortly after Fahey returned to the lobby of the North Tower, the South Tower was struck and subsequently collapsed, blowing him to the floor and covering him with debris and rubble. Compl. ¶ 23. When the dust-filled air began clearing and Fahey was able to see again, Fahey helped carry the body of Father Michael Judge, the FDNY's chaplain, out of the North Tower's lobby and, moments later, the North Tower too collapsed. Compl. ¶¶ 24-25. Physically unscathed, Fahey returned to Ladder 1, which

became the command post for the recovery operation at ground zero, and eventually made his way home. Compl. ¶¶ 27-28.

The events of September 11 haunted Fahey, and, in the years after, he frequently turned to alcohol for solace. Compl. ¶¶ 28-29, 31. Beginning on November 11, 2001, he also sought medical treatment for symptoms of anxiety and PTSD. Declaration of Leonard Zack in Opposition to Summary Judgment dated Dec. 9, 2011 ("Zack Decl.") Ex. I, at 7. Fahey never told anyone from the FDNY about his anxiety or that he was suffering from PTSD. Andersen Decl. Ex. D, at 31-32. Nor did he seek out help from FDNY counselors; in fact, he refused counseling, testifying that "I was approached by counselors, but I didn't believe in counseling. I didn't know what was going on and I really didn't care." Id. Ex. D, at 30. Fahey's wife, Shannon Colonna, wanted Fahey to attend counseling for his alcohol problem, and his drinking concerned her to such an extent that in late 2002 she contacted Battalion Chief Bill Ulm to try to urge him to get Fahey counseling. Zack Decl. Ex. E, at 2. Her efforts were ultimately unavailing. Andersen Decl. Ex. D, at 53-54.

On October 14, 2004, the FDNY's Testing Unit administered a random drug test on Fahey, and Fahey tested positive for cocaine. Defs.' 56.1 ¶ 6; Andersen Decl. Ex. E, at 37. Fahey testified that two nights before the positive test, he had attended a retirement party for one of his colleagues where he drank to the point of blacking out. Andersen Decl. Ex. E, at 38. The day after the party, Fahey started a shift as the chauffeur, or driver, of the fire truck. Zack Decl. Ex. E, at 2.

The FDNY on October 21, 2004 brought disciplinary charges against Fahey as a result of the positive drug test. Defs.' 56.1 ¶ 7. Pending the outcome of these charges,

Fahey was removed from his firefighter duties and was forced to report to headquarters, where he "did nothing all day." Andersen Decl. Ex. D, at 20; Defs.' 56.1 ¶ 8. After seven or eight months, Fahey was assigned to assist in the library at the Fire Academy. Defs.' 56.1 ¶ 9. As a result of the positive drug test, the FDNY also ordered Fahey to attend counseling at the FDNY's Counseling Services Unit ("CSU"), where a counselor there diagnosed him with PTSD. Defs.' 56.1 ¶ 25; Andersen Decl. Ex. D, at 42.

On May 18, 2007 and June 20, 2007, an administrative law judge (the "ALJ") at the New York City Office of Administrative Trials and Hearings conducted an Administrative Hearing with respect to the disciplinary charges brought against Fahey, and, in a report and recommendation dated October 9, 2007, concluded that the FDNY had established that Fahey tested positive for cocaine and that Fahey did not prove that his PTSD rendered his drug use involuntary. Defs.' 56.1 ¶¶ 10, 13; Andersen Decl. Ex. B, at 13. Although the ALJ acknowledged that the FDNY's "zero-tolerance" Substance Abuse Policy requires termination in all instances where an employee tests positive for illegal drug use unless the employee voluntarily seeks counseling with the CSU or another program—which Fahey failed to do—she recommended that the FDNY depart from its policy, not terminate Fahey, and instead assess a penalty of a 20 day forfeiture of pay. Andersen Decl. Ex. B, at 14-16. The ALJ reasoned that such mitigation was warranted in light of Fahey's brave service on September 11th and because inability to seek help voluntarily is a symptom of those who suffer from PTSD. Id. Ex. B, at 14-15.

In a decision dated November 19, 2008, FDNY Commissioner Nicholas Scoppetta (the "Commissioner") adopted the ALJ's findings with respect to Fahey's guilt but rejected the ALJ's recommended penalty, instead terminating Fahey's employment with

the FDNY effective November 21, 2008.  Id. Ex. C, at 1, 4.  The Commissioner reasoned that the FDNY "cannot simply ignore the facts that Firefighter Fahey refused the counseling services available to all firefighters, that he voluntarily ingested an illegal substance, cocaine, and that he worked with cocaine in his system" and that Fahey's conduct "potentially placed his safety, his co-worker's safety, and the public's safety in jeopardy."  Id. Ex. C, at 3.

Fahey sought judicial review of the Commissioner's decision and on February 24, 2009 commenced a proceeding in the state court pursuant to Article 78 of New York's Civil Practice Law and Rules (the "Article 78 proceeding").  Defs.' 56.1 ¶ 20; Zack Decl. Ex. E, at 1.  At the Article 78 proceeding, Fahey maintained that the Commissioner's decision was arbitrary and capricious and an abuse of discretion because (1) the Commissioner chose to ignore evidence that the FDNY did not recognize or combat Fahey's problems with alcohol abuse until after he tested positive for cocaine; and (2) the FDNY's failure to help Fahey with his PTSD was in contravention of FDNY protocols.  Zack Decl. Ex. E, at 4; id. Ex. F.  The state court rejected these contentions, concluding that the Commissioner's decision to terminate Fahey "had a rational basis in law and fact."  Id. Ex. E, at 6.

In neither his administrative proceedings nor the Article 78 proceeding did Fahey contend that the FDNY discriminated against him on the basis of his PTSD.  Instead, he does so for the first time here, asserting in the complaint filed October 8, 2010 claims against the FDNY and the City arising under the  ADA, the New State Executive Law §§

296, 297, and the New York City Administrative Code § 8-107.[1]  Fahey alleges that he

was subject to discriminatory discharge on the basis of his PTSD and that the FDNY

failed to reasonably accommodate his illness by allowing him to continue working at the

FDNY in a role other than as a firefighter.  Compl. ¶¶ 55-56, 58-78.  Defendants filed

their answer on December 27, 2010.  Answer dated Dec. 27, 2010 (Dkt. No. 6).  On

October 20, 2011, defendants filed their submissions in support of their motion for

summary judgment.  Memorandum of Law in Support of Defendants' Motion for

Summary Judgment dated Oct. 20, 2011 ("Defs.' Mem.") (Dkt. No. 21).  Fahey on

December 22, 2011 filed his opposition submissions, and on January 13, 2012

defendants filed their reply.  Memorandum of Law in Opposition to Defendants' Motion

for Summary Judgment dated Dec. 8, 2011 ("Pl.'s Mem.") (Dkt. No. 24); Reply

Memorandum of Law in Further Support of Defendants' Motion for Summary

Judgment dated Jan. 13, 2012 (Dkt. No. 30).

## II. DISCUSSION

### A.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  "'An issue of fact is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.  A fact is material if it

---

[1] The complaint also originally included a negligence claim; however, the Court on January 12, 2012 granted Fahey's motion to amend the complaint to withdraw it. Order dated Jan. 12, 2012 (Dkt. No. 29).  Moreover, Fahey's wife, Shannon Colonna, was originally a named plaintiff in this action, but by Stipulation and Order dated April 21, 2011, the Court dismissed Colonna's claims with prejudice.  Stipulation and Order dated Apr. 11, 2011 (Dkt. No. 14).

might affect the outcome of the suit under the governing law.'" <u>Fincher v. Depository Trust & Clearing Corp.</u>, 604 F.3d 712, 720 (2d Cir. 2010) (quoting <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 35 (2d Cir. 2008)).

The moving party bears the burden of establishing the absence of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. <u>Id.</u> at 322-23. To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'" <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot "'rely on conclusory allegations or unsubstantiated speculation.'" <u>Id.</u> (quoting <u>Fed. Deposit Ins. Corp. v. Great Am. Ins. Co.</u>, 607 F.3d 288, 292 (2d Cir. 2010)).

A court deciding a motion for summary judgment must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" <u>Brod v. Omya, Inc.</u>, 653 F.3d 156, 164 (2d Cir. 2011) (quoting <u>Williams v. R.H. Donnelley Corp.</u>, 368 F.3d 123, 126 (2d Cir. 2004)). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" <u>Kaytor v. Elec. Boat Corp.</u>, 609 F.3d 537, 545 (2d Cir. 2010) (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

Although the Court of Appeals has stated that "an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions" it has nevertheless also stated that "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." Schiano v. Quality Payroll Sys., 445 F.3d 597, 603 (2d Cir. 2006) (internal citations and quotation marks omitted).

Defendants advance several arguments in support of their motion for summary judgment: (1) the FDNY is not a suable entity and the claims against it must be dismissed; (2) collateral estoppel bars Fahey's ADA claims; (3) Fahey has failed to establish a prima facie case for the claims; and (4) even if he could, defendants have offered a legitimate, nondiscriminatory reason for their termination of Fahey—his positive drug test for cocaine. Defs.' Mem. at 6-14. The Court will address these contentions in turn below.

## B. The FDNY is not a Suable Entity

As an initial matter, summary judgment is granted on all claims brought against the FDNY because the FDNY—a municipal agency—cannot be subject to suit. The New York City Charter provides that "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17. § 396; accord Ximines v. George Wingate High Sch., 516 F.3d 156, 160 (2d Cir. 2008) (per curiam) (citing Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007)). Accordingly, the FDNY is not a suable entity, and all claims against it are dismissed.

See, e.g., <u>United States v. City of New York</u>, 683 F. Supp. 2d 225, 243 (E.D.N.Y. 2010) (citing <u>Warheit v. City of New York</u>, No. 02 Civ. 7345 (PAC), 2006 WL 2381871, at *13 (S.D.N.Y. Aug. 15, 2006)) (dismissing all claims against FDNY because FDNY not suable); <u>Petaway v. City of New York</u>, No. 02 Civ. 2715 (NGG) (LB), 2005 WL 2137805, at *3 (E.D.N.Y. Sept. 2, 2005) (citations omitted) (same).

## C. Disability Discrimination Claims under the ADA

The ADA prohibits employers from discriminating against workers with disabilities. The version of the ADA in force at the time of the relevant events in this action provided:

> [n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (2006).[2] "Discrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such

---

[2] The Americans with Disabilities Act Amendments of 2008 ("ADAA"), which amended the ADA and expand its coverage, became effective on January 1, 2009. <u>See</u> Pub. L. 110-325, 112 Stat. 3553 (2008). "Federal courts have uniformly decided that the ADAA will not be retroactively applied to conduct that preceded its effective date. Because all relevant conduct is alleged to have occurred prior to January 1, 2009, the Court will not apply the ADAA to [plaintiff's] claims." <u>Parada v. Banco Indus. de Venezuela, C.A.</u>, No. 10 Civ. 0883 (SHS), 2011 WL 519295, at *4 n.4 (S.D.N.Y. Feb. 15, 2011) (citations omitted); <u>see also</u> <u>Wega v. Ctr. for Disability Rights, Inc.</u>, 395 F. App'x 782, 784 n.1 (2d Cir. 2010) (summary order); <u>Ragusa v. Malverne Union Free Sch. Dist.</u>, 381 F. App'x 85, 88 n.2 (2d Cir. 2010) (summary order). Here, the alleged discriminatory conduct—Fahey's termination—occurred on November 21, 2008 before the effective date of the ADAA. Compl. ¶ 57. The ADAA thus does not apply to Fahey's ADA claims.

covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" <u>Brady v. Wal-Mart Stores, Inc.</u>, 531 F.3d 127, 134 (2d Cir. 2008) (quoting 42 U.S.C. § 12112(b)(5)(A)). Fahey contends that defendants violated the ADA by (1) terminating him because he suffered from PTSD and (2) failing to provide him with a reasonable accommodation for his PTSD by allowing him to continue his employment at the FDNY in a position in which he would not pose a risk to public safety.  Pl.'s Opp'n at 16, 18.

The Court must analyze Fahey's ADA discrimination claims under the "burden-shifting" framework set forth by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny.  <u>See, e.g.</u>, <u>McBride v. BIC Consumer Prods. Mfg. Co.</u>, 583 F.3d 92, 96 (2d Cir. 2009).  Under this framework, the plaintiff bears the initial burden of proving a prima facie case by a preponderance of the evidence.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  "The burden of establishing a prima facie case is not a heavy one.  One might characterize it as minimal."  <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 134 (2d Cir. 2000) (citation omitted).  If the plaintiff is successful, the burden of production shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment action.  <u>Reeves</u>, 530 U.S. at 142-43.  If the defendant is successful, the presumption of discrimination has been rebutted, and the burden then shifts back to the plaintiff to prove that those "legitimate" reasons were a pretext for discrimination.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507-08, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

To establish a prima facie case for discriminatory discharge under the ADA, a plaintiff must show that:  (1) his employer is subject to the ADA; (2) he is a "qualified

individual" with a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability.  See, e.g., Brady, 531 F.3d at 134 (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)); Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 149-50 (2d Cir. 1998).

Moreover, to establish a prima facie reasonable accommodation claim, a plaintiff must show that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodations, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 577 (S.D.N.Y. 2008) (citing Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004)).

Having set forth the legal framework that governs Fahey's ADA claims, the Court first considers whether they are barred by collateral estoppel.

### 1.  Fahey's Claims are Not Barred by Collateral Estoppel

28 U.S.C. § 1738 requires federal courts to "afford the same full faith and credit to state court judgments that would apply in the State's own courts."  Kremer v. Chem. Constr. Corp., 456 U.S. 461, 463, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982).  Accordingly, unless a later statute contains an express or implied repeal of section 1738, a federal court must apply the collateral estoppel principles of the rendering state.  Allen v. McCurry, 449 U.S. 90, 98-99, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980) (collateral estoppel applied where section 1983 did not expressly or impliedly repeal section 1738); see Kremer, 456 U.S. at 468 (collateral estoppel applied where Title VII did not expressly or

impliedly repeal section 1738).  "Since the Court is pointed to no statute that repeals section 1738 as to ADA claims, the preclusion law of New York State applies."  <u>Givens v. City of New York</u>, No. 11 Civ. 2568 (PKC) (JCF), 2012 WL 75027, at *5 (S.D.N.Y. Jan. 10, 2012).

Collateral estoppel bars litigants from relitigating any fact or issue that has already been fully and fairly litigated in a prior proceeding that produced a final judgment on the merits.  <u>See</u> <u>Bank of N.Y. v. First Millenium, Inc.</u>, 607 F.3d 905, 918 (2d Cir. 2010) (citing <u>Purdy v. Zeldes</u>, 337 F.3d 253, 258 (2d Cir. 2003)).  Under New York law, collateral estoppel "will apply only if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate the issue in the first proceeding."  <u>Hoblock v. Albany Cnty. Bd. of Elections</u>, 422 F.3d 77, 94 (2d Cir. 2005) (citation omitted); <u>accord</u> <u>Jenkins v. City of New York</u>, 478 F.3d 76, 85 (2d Cir. 2007) (citation and internal quotation marks omitted).  The party seeking the benefit of collateral estoppel "bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues."  <u>Khandhar v. Elfenbein</u>, 943 F.2d 244, 247 (2d Cir. 1991) (citations omitted).

Defendants have failed to meet their burden of proving the identity of the issues here as the issue that would bar Fahey's ADA claims—that the FDNY terminated him solely because of his drug use—was neither raised nor resolved against him at the Article 78 proceeding.  <u>Latino Officers Ass'n v. City of New York</u>, 253 F. Supp. 2d 771 (S.D.N.Y. 2003), is instructive in this regard.  There, the court considered the equal protection and

First Amendment retaliation claims of several minority NYPD officers who were dismissed for various infractions and brought unsuccessful Article 78 petitions challenging their dismissals.  Id. at 783-85.  One of the officers contended in the Article 78 proceeding that his termination was retaliatory and discriminatory; the other did not.  Id. at  784-87.  With respect to the officer who raised the issues at the Article 78 proceeding, the court concluded that because he had done so, the state court's conclusion that the penalty of dismissal did not shock the conscience, "necessarily implied rejection of [his] claim that his termination was discriminatory and retaliatory" and therefore the court concluded that his claims were barred.  Id. at 787.  As for the officer that did not raise the issues during the Article 78 proceeding, the court reached the opposite conclusion because the state court's "finding that the decision to terminate was supported by substantial evidence—essentially a finding that it was rational—does not lead inexorably to the conclusion that race was not a motivating factor in the NYPD's decision to terminate him."  Id. at 785; see also id. ("It is possible that race motivated defendants' decisions to terminate [the plaintiff], even though defendants had another articulated basis for the termination that the Article 78 court found to be rational.").

The same is true here.  Like the officer in Latino Officers who did not argue during his Article 78 proceeding that he was terminated for discriminatory reasons, Fahey did not maintain that he was terminated because of his disability during his Article 78 proceeding.  See Zack Decl. Ex. E, at 4; id. Ex. F.[3]  Accordingly, the state

_____

[3] Defendants cite to Latino Officers in support of their contention that collateral estoppel bars Fahey's discriminatory discharge claim.  Defs.'s Mem. at 6 ("'Castro is barred from relitigating the wrongful termination claims.'" (quoting Latino Officers, 253

court's ruling that the Commissioner's decision to terminate Fahey "was not arbitrary or capricious, or without a rational basis in law or fact," does not necessarily address whether the decision to terminate Fahey was made, at least in part, because of his PTSD. Id. Ex. E, at 6.  Fahey's ADA claims are thus not barred by collateral estoppel because the issue of the reason for Fahey's termination was neither raised by Fahey nor actually and necessarily decided by the state court during the Article 78 proceeding.

Though the facts giving rise to Fahey's termination are not dispositive of his ADA claims, to the extent Fahey seeks to challenge these facts, he is collaterally estopped from doing so as their determination was essential to the state court's resolution of Fahey's petition in the Article 78 proceeding.  See Latino Officers, 253 F. Supp. 2d at 784; see also Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 874, 104 S. Ct. 2794, 81 L. Ed. 2d 718 (1984) ("A judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its

_____

F. Supp. 2d at 787)).  But the language from Latino Officers they seize upon refers not to the officer that failed to raise his discrimination and retaliation arguments at the Article 78 proceeding—the situation analogous to the one presented here—but the officer who argued at his Article 78 proceeding that he was terminated for discriminatory and retaliatory reasons.  See Latino Officers, 243 F. Supp. 2d at 787 ("Castro raised in his Article 78 proceeding the arguments that his termination was retaliatory and discriminatory.").

Defendants reliance on DiLauria v. Town of Harrison, 64 F. App'x 267, 269 & n.1 (2d Cir. 2003) (summary order) and Kremer is similarly misplaced.  Each of the plaintiffs in those cases had argued during their Article 78 proceedings that their terminations were discriminatory.  See Kremer, 456 U.S. at 463-64 (plaintiff complained that he was terminated from his engineering job on the basis of his religion and natural origin in administrative channels and during Article 78 proceeding); DiLauria, 64 F. App'x at 270 (explaining that at the Article 78 proceeding, "[p]laintiff specifically presented to the state court a description of the discriminatory actions that he believed played a role the Police Commission's unlawful decision to terminate him.").

determination was essential to that judgment." (emphasis added)).  Fahey thus is collaterally estopped from challenging that (1) he voluntarily ingested cocaine; (2) his excessive drinking was not a valid excuse for failing his drug test; and (3) that he worked as a chauffeur the next day while the cocaine was still in his system—all factual issues essential to the state court's judgment that the Commissioner's decision to terminate Fahey had a rational basis in law and fact.  See Zack Decl. Ex. E, at 6.

Having concluded that Fahey's ADA claims are not barred by collateral estoppel, the Court now turns to their merits.

### 2.  Fahey's Discriminatory Discharge Claim is Meritless

Again, to establish a prima facie case for discriminatory discharge case Fahey must show that (1) defendants are subject to the ADA; (2) he is a "qualified individual" with a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability.  See, e.g., Brady, 531 F.3d at 134.  Defendants do not dispute that they are "covered entit[ies]" subject to the ADA.  See 42 U.S.C. § 12111(2) ("The term 'covered entity' means an employer, employment agency, labor organization, or joint labor management committee.").  Instead, they focus on the second, third, and fourth elements of the prima facie case for discriminatory discharge, contending that Fahey is neither a "qualified individual" with a disability, nor that he is entitled to a reasonable accommodation, nor that he was fired because of his disability.  Def.'s Mem. at 7-10.

The Court will begin by addressing defendants' last contention—that Fahey was not fired because of his PTSD.  Although Fahey is correct that because "it is rare indeed

to find in employer's records proof that a personnel decision was made for a discriminatory reason," the Court must scrutinize the record for circumstantial evidence that could support an inference of discrimination, Pl.'s Opp'n at 18; <u>see also</u> <u>Schiano</u>, 445 F.3d at 603; <u>Chertkova v. Conn. General Life Ins. Co.</u>, 92 F.3d 81, 87 (2d Cir. 1996), Fahey nevertheless fails to point the Court to any evidence—and the Court has found none—that could support such an inference.  In fact, Fahey appears to acknowledge in his submissions that he was fired not because he allegedly suffered from PTSD but because he violated the Fire Department's zero tolerance policy regarding drug use.  <u>See</u> Pl.'s Opp'n at 17 ("Plaintiff, in his complaint, asserts that he was discriminated against for violating Fire Department rules and regulations."); <u>id.</u> at 21 ("Plaintiff's Employment . . . Was Terminated Pursuant to the FDNY's Zero Tolerance Drug Policy.").

Fahey also maintains that his alleged PTSD should have been a mitigating factor in the decision whether to terminate him in light of his history with the disease and the FDNY's purported failure to provide him with counseling—actions, he claims, that embody the very "definition of disability discrimination."  Pl.'s Opp'n at 21; <u>see also</u> Pl.'s Opp'n at 30 ("[W]hen something unfortunate happened such as the positive drug testing, the FDNY turned a blind eye and decided to avoid any and all mitigating circumstances and simply terminate him.").  But this claim was already considered and rejected by the state court in the Article 78 proceeding.  <u>See</u> Zack Decl. Ex. E, at 4.[4]

---

[4] Much of Fahey's submission seems simply to reprise the arguments he previously made to the state court.  <u>See, e.g.</u>, Pl.'s Opp'n at 21 ("In further support of Plaintiff's claim, the New York Court of Appeals has explicitly stated that 'a decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reasons for reach a different result . . . is arbitrary and capricious.' . . . [T]he decision . . . to terminate the employment of Plaintiff Fahey has failed to adhere to precedent

Moreover, it has no bearing on the inquiry here:  whether Fahey was terminated because of his PTSD.  Because Fahey failed to establish this element—a <u>sine</u> <u>qua</u> <u>non</u> of his prima facie case—Fahey's discriminatory discharge claim fails, and the Court need not consider whether he can establish its other elements.

Even assuming that Fahey was able to establish a prima facie case of discriminatory discharge, defendants have offered a legitimate nondiscriminatory reason for their decision to terminate Fahey—his positive test for cocaine use—and Fahey has "failed to provide any evidence of discriminatory animus on which the Court could conclude that [defendants] stated reason for . . . terminating [plaintiff] was pretextual."  <u>Exarhakis v. Visiting Nurse Serv. of New York</u>, No. 02 Civ. 5562 (ILG), 2006 WL 335420, at *11 (E.D.N.Y. Feb. 6, 2006) (dismissing ADA claim on summary judgment where plaintiff failed to provide the Court with any evidence that employer's explanation was pretextual beyond plaintiff's "bald allegations").[5]  Indeed, courts

previously set by the FDNY."); <u>id.</u> at 23 ("Fahey was discriminated against not just because he violated the zero tolerance policy but rather because the decision to terminate was arbitrarily made."); <u>id.</u> at 25 ("It is completely arbitrary and capricious then for the FDNY, after the fact, to make such allowances without making it binding on all members for all infractions.").  This observation is also borne out by Fahey's deposition testimony:

> Q.  How did [Commissioner Scoppetta] discriminate against you based on the  [PTSD]?
>
> A.  Because he fired me.  Terminated me after going to the oath and him reading the whole transcript, just disregarding it all and just fire me [sic].

Andersen Decl. Ex. D, at 49.

[5] Fahey contends that the reason for terminating him is pretextual as "other firefighters who had not been found to be suffering from a disability who had received

consistently conclude that an employee's failure of a drug test constitutes a legitimate nondiscriminatory reason for terminating the employee, particularly where, as here, the employee's job involves the public. See Knighton v. City of Syracuse Fire Dept., 145 F. Supp. 2d 217, 224 (N.D.N.Y. 2001) (positive drug test constitutes "legitimate business reason to terminate" firefighter asserting Title VII discrimination claim); Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist., No. 08 Civ. 1948 (RKE), 2011 WL 4526520, at *11 (S.D.N.Y. Sept. 28, 2011) (positive drug tests and other misconduct constitute legitimate non-discriminatory reason for termination of public school teacher asserting ADA discrimination claim); Brown v. Triboro Coach Corp., 153 F. Supp. 2d 172, 177 (E.D.N.Y. 2001) (positive drug tests constitute valid non-discriminatory reason

---

[sic] different types of punishment for illegal drug use, including but not limited to suspensions without pay for various period [sic] of time and early retirement with the applicable benefits ancillary to retirement, without termination." Compl. ¶ 49; see also Pl.'s Opp'n at 29.

But Fahey fails to provide the Court with any evidence that establishes, or even suggests, that the FDNY's intentionally discriminated against Fahey on the basis of his disability—the ultimate question in determining whether an employer's reason for discharge is pretextual. See Reeves, 530 U.S. at 146-47 ("The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." (internal citation and quotation marks omitted)); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) ("In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." (internal citations and quotation marks omitted)). Moreover, Fahey has made no showing that any individuals who were not terminated after testing positive for drugs were "similarly situated [to him] in all material respects." See Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).

for employer's termination of bus driver asserting ADA and Title VII discrimination claims); <u>Santiago v. Greyhound Lines, Inc.</u>, 956 F. Supp. 144, 156 (N.D.N.Y. 1997) (positive drug tests constitute legitimate nondiscriminatory reason for termination of bus driver asserting state law employment discrimination claims); <u>cf.</u> <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 54-55, 124 S. Ct. 513, 157 L. Ed. 2d 357 (2003) (no-rehire policy for known drug users is "a quintessential, legitimate, nondiscriminatory reason for refusing to rehire an employee who was terminated for violating workplace conduct rules").

In sum, because Fahey has failed to establish a prima facie case of discriminatory discharge and, even if he could, the FDNY has offered a legitimate nondiscriminatory reason for their decision to terminate him that is not pretextual, defendants' motion for summary judgment on Fahey's discriminatory discharge claim is granted.

### 3. Fahey's Failure to Accommodate Claim is Meritless

Fahey also claims that he suffered discrimination as defendants failed to provide him with a reasonable accommodation for his PTSD by allowing him to continue his employment at the FDNY in a position in which he would not pose a risk to public safety. Pl.'s Opp'n at 16 ("Defendants fail to recognize . . . that reassignment of a disabled employee to a vacant light duty position constitutes a reasonable accommodation under the ADA."). The "accommodation" Fahey thus seeks is essentially to receive a penalty for testing positive for cocaine other than his termination. "Such a request is unreasonable as a matter of law, because [employee misconduct] . . . always constitute[s] legitimate and nondiscriminatory reasons for terminating employment, even where the misconduct is caused by an undivulged

psychiatric condition.  The ADA does not excuse workplace misconduct because the misconduct is related to a disability." Canales-Jacobs v. N. Y. State Office of Ct. Admin., 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009) (rejecting as unreasonable purported "accommodation" that court employee suffering from depression receive penalty other than termination for her acts of misconduct—yelling at a judge and cursing at the public—and granting summary judgment on failure to accommodate claim) (citations omitted); see also 2 Americans with Disabilities:  Practice and Compliance Manual § 7:184 (2011) ("An employer need not consider a reasonable accommodation, however, where the misconduct results from alcoholism or illegal drug use, as disability-caused misconduct due to alcoholism and illegal drug use is not protected under the ADA.").

Even if such a request were not unreasonable as a matter of law, Fahey has not established a prima facie case of failure to reasonably accommodate, among other reasons, because he has failed to provide the Court with any evidence that defendants had notice of his PTSD before removing him from his duties as a firefighter and before the commencement of disciplinary proceedings against him.[6]  When seeking an accommodation for an alleged disability, an employee must notify his employer of his disability before the employer takes the job action which the employee is challenging. See, e.g., Canales-Jacobs, 640 F. Supp. 2d at 499 (collecting cases); Williams v. N.Y. City

_____

[6] To establish a prima facie claim for failure to reasonably accommodate, a plaintiff must show that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodations, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Monterroso v. 591 F. Supp. 2d at 577 (citing Rodal, 369 F.3d at 118 (2d Cir. 2004); accord Stone v. City of Mount Vernon, 118 F.3d 92, 96 (2d Cir. 1997).

Hous. Auth., No. 07 Civ. 7587 (RJS), 2009 WL 804137, at *7 (S.D.N.Y. Mar. 26, 2009) (granting motion to dismiss ADA claim as "without adequate knowledge of her medical condition," defendant was "not in a position to even offer, let alone refuse, a reasonable accommodation to plaintiff" (quoting Thompson v. City of New York, No. 98 Civ. 4725 (GBD), 2002 WL 31760219, at *9 (S.D.N.Y. Dec. 9, 2002))).  Fahey, nevertheless, failed to provide such notice here.  It is undisputed that he was diagnosed with PTSD by counselors at the FDNY's CSU only after he had already tested positive for cocaine and, as a result, was ordered by the FDNY to attend CSU counseling.  Defs.' 56.1 ¶ 24; see also Andersen Decl. Ex. D, at 41-42.  Likewise, although Fahey's private doctor diagnosed him with PTSD shortly after September 11, Fahey did not inform anyone at the FDNY of the diagnosis:

> Q.  So Dr. Andin mentioned you might be suffering from post traumatic stress disorder?
>
> A.  Yes.
>
> Q.  When was that?
>
> A.  Right after 9/11.
>
> Q.  Did you tell anyone at the fire department that Dr. Andin said you might be suffering from post traumatic stress disorder?
>
> A.  No.
>
> Q.  Dr. Andin is not associated with the fire department; is that right?
>
> A.  No.

Andersen Decl. Ex. D, at 31-32. In any event, assuming Fahey's PTSD was known to the FDNY earlier, such knowledge would not excuse the fact that Fahey's positive drug test constitutes a legitimate nondiscriminatory reason for his termination, rendering the "accommodation" Fahey sought unavailable.

Accordingly, for all of these reasons, Fahey's claim against defendants for failing to make a reasonable accommodation fails, and defendants' motion for summary judgment with respect to this claim is granted.

### D. Fahey's Remaining Claims are Dismissed

Because all of Fahey's federal claims are dismissed and the only remaining claims arise under state and local law, the Court declines to exercise supplemental jurisdiction over Fahey's pendent claims, which are dismissed without prejudice to their renewal in state court. See 28 U.S.C. § 1367(c)(3); Giordano v. City of New York, 274 F.3d 740, 755 (2d Cir. 2001) (noting that because ADA claims are dismissed, state law disability discrimination claims also "should be dismissed so that state courts can, if so called upon, decide for themselves whatever questions of state law this case may present").

### III.    CONCLUSION

For all of the foregoing reasons, defendants' motion for summary is hereby GRANTED as to all of Fahey's federal claims.  Fahey's state and municipal claims are dismissed without prejudice to their renewal in state court.  The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated:      Brooklyn, New York
            February 7, 2012


_____/s/_____
I. Leo Glasser
Senior United States District Judge